UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE B. LARSEN,<br>    Plaintiff, | :<br>:<br>: | CIVIL ACTION NO.<br>3:09-CV-287 (JCH) |
| v. | :<br>: | |
| JOSEPH RAINONE, ET AL.,<br>    Defendants. | :<br>: | NOVEMBER 17, 2010 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 32)**

**I.     INTRODUCTION**

Plaintiff, Lorraine B. Larsen ("Larsen"), brings this action against defendants, Joseph Rainone ("Rainone"), Carl Franzetti ("Franzetti"), Eva Maldonado ("Maldonado"), and Robert Shawinsky ("Shawinsky"), officers for the Stamford Police Department, for damages allegedly resulting from the behavior of the defendants during Larsen's arrest and detention. Specifically, Larsen accuses Rainone and Franzetti of using unreasonable force in violation of the Fourth and Fourteenth Amendments, and she accuses all defendants of deliberate indifference to her serious medical needs, in violation of the Fourteenth Amendment.

Defendants move the court under Fed. R. Civ. P. 56 for summary judgment in their favor. For the following reasons, the court denies defendants' Motion.

**II.    FACTUAL BACKGROUND**[1]

On November 27, 2006, Larsen received a phone call, informing her that her mother, Gladys Byczajka ("Byczajka"), was having difficulty breathing. L.R. 56(a)(1) ¶ 6

---

[1] For the purposes of this section, undisputed facts will be cited to defendants' Local Rule 56(a)(1) Statement (Doc. No. 44). All other facts will be cited to the record produced by the parties.

1

(Doc. No. 32-5). At the time, Byczajka was being cared for at Sunrise Assisted Living of Stamford ("Sunrise"). Id. at ¶ 3. Sunrise employees contacted Larsen to inform her of her mother's condition and also contacted 911 for emergency assistance. Id. When Larsen arrived at Sunrise, paramedics were already on the scene and were preparing to transport Byczajka to the hospital for further treatment. Id. at ¶ 9.

Larsen did not wish for her mother to go to the hospital and insisted that Byczajka remain in Sunrise's care. Id. at ¶ 10, Larsen Dep. 46:9-48:13, Mar. 18, 2010, Ex. 2 to Pl.'s Mem. in Opp. (Doc. No. 33). At the recommendation of a paramedic, one of the firemen who had responded to the initial call contacted the police. L.R. 56(a)(1) Stmt. ¶ 11.

Rainone and Franzetti arrived at the scene. Id. at ¶ 12. Both officers recall being told, before they entered the room, that Larsen was refusing to let paramedics take her mother to the hospital. Franzetti Aff. ¶ 6, Ex. K to Defs.' Mot. for Summ. J. (Doc. No. 32); Rainone Aff. ¶ 6, Ex. J. to Defs.' Mot. At this point, Larsen's story and that of the officers diverge dramatically. According to Rainone and Franzetti, their behavior was gallant, while Larsen was crazed and physically violent. See Franzetti Aff. ¶¶ 7-20; Rainone Aff. ¶¶ 7-19. According to Larsen, the officers were brutal and cruel, while she behaved quite reasonably. See Larsen Dep. 52:5-63:5.

After being arrested and removed from Sunrise, Larsen claims to have repeatedly requested medical attention. Id. at 63:1-4, 66:6-8, 69:11-19, 70:1-3. She said that she was having trouble breathing and that her heart was beating erratically, and she feared the worst. See, e.g., id. at 59:4-10, 60:20-21, 63:23-25, 66:24-67:3. Notably, only Maldonado disclaims that Larsen requested medical attention. See

2

Maldonado Aff. ¶ 9, Ex. R to Defs.' Mot. The other officers only state that, based on their observations, Larsen did not need medical attention. See Franzetti Aff. ¶ 22; Rainone Aff. ¶ 20; Shawinsky Aff. ¶¶ 7-8, Ex. P to Defs.' Mot. Larsen was released from police custody after about an hour and a half. L.R. 56(a)(2) Stmt. ¶ 28 (Doc. No. 33-1). She promptly went to the hospital to receive an evaluation, where she was monitored for forty-eight hours. L.R. 56(a)(2) Stmt., Stmt. of Disputed Facts ¶ 11.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a

reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.    DISCUSSION

### A.    Excessive or Unreasonable Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, No. 08-1769-cv, 2010 WL 4008747, at *4 (2d Cir. Oct. 14, 2010). Defendants argue that, even if the facts were as Larsen describes them, their force would have been reasonable. The court disagrees and finds that Larsen's testimony is sufficient to create a material issue of fact, such that a jury could find that the use of force by Rainone and Franzetti was unreasonable.

A court's analysis of a claim of unreasonable force is fact specific and requires a balancing of a number of factors, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. In the instant case, there is no dispute between the parties that Rainone and Franzetti received information of a disturbance in Byczajka's room. Larsen was reportedly "refusing to allow her mother to be transported" to the hospital. Rainone Aff. ¶ 6. However, there is nothing in the officers'

4

reports and testimony to indicate that they were told that Larsen was behaving dangerously. When the officers entered the clinic, they encountered a woman (Larsen) who was "older" and "relatively small of stature." Id. at ¶ 16. Larsen carried no weapons. According to Larsen, she was completely calm and did not do anything to physically obstruct the officers or the paramedics. Unprovoked, Franzetti tackled her and sat on her chest, while Rainone placed his knee on her neck and put handcuffs on her quite tightly. Larsen Dep. 53:12-59:3. The only resistance Larsen offered was to ask to be let up, as she was having trouble breathing. Id. at 56:18-20, 58:23-25.

Defendants challenge the seriousness of the Larsen's injuries. Notably, Larsen did not produce an expert medical affidavit discussing the severity of her injuries. However, there does not seem to be a dispute that the injuries Larsen did experience—including blunt chest trauma, a bruised thigh, and redness and swelling in her wrists—were in fact caused by Rainone and Franzetti. The Fourth Amendment requires officers to use <u>reasonable</u> force. Even if Rainone and Franzetti did not cause permanent injury to Larsen, that does not mean their use of force was reasonable. See, e.g., Kerman v. City of New York, 261 F.3d 229, 239-40 (2d Cir. 2001) ("If the jury were to credit Kerman's version of the facts and believe his allegations of handcuff tightening, infliction of pain, verbal abuse, humiliation and unnecessary confinement to a restraint bag in a painful position . . . [the force] might well be unreasonable and therefore excessive."); Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (finding that testimony of pushing, yanking, and twisting of plaintiff during arrest could rise to unreasonable amount of force). A reasonable jury could find that tackling and forcefully handcuffing an individual who is not resisting or posing any physical threat is an

unreasonable use of force, <u>even if</u> the resulting injuries were relatively minor. The lack of more elaborate medical evidence does not eliminate the issue of fact created by Larsen. See <u>Robison</u>, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

A jury might, of course, reject Larsen's recount of the facts. However, at this stage, the court must consider the facts in a light most favorable to the plaintiff. Crediting Larsen's testimony, a reasonable jury could find that Franzetti and Rainone used unreasonable force in violation of Larsen's Fourth and Fourteenth Amendment rights.

    B.    <u>Deliberate Indifference</u>

An individual who is in police custody and in serious medical need has a right, pursuant to the Due Process Clause of the Fourteenth Amendment, to receive medical treatment, and a detaining officer's deliberate indifference to such a need is actionable. See <u>Caiozzo v. Koreman</u>, 581 F.3d 63, 69 (2d Cir. 2009). There are two elements to this claim: (1) plaintiff must have experienced a "serious medical condition," and (2) the custodial officer must have treated this condition with deliberate indifference. <u>Id.</u> at 72.

There is no "precise metric" for analyzing the seriousness of a detainee's medical condition. See <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003). Some factors that a court will consider include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" <u>Id.</u> Both parties produced

documentation from Larsen's medical evaluations following her period of detention. However, neither side submitted expert medical testimony regarding the seriousness of Larsen's condition. The only evidence produced by the defendants to support their claim that Larsen's injuries were not objectively serious are the subjective observations of the police officers. This evidence is disputed by the contradictory evidence presented by Larsen. The court is not prepared to say, in light of the record, that a reasonable jury could not find Larsen's injuries to be serious. Based on Larsen's description of her symptoms, her age, and the medical documents produced, the court concludes that there is a material issue of fact with respect to the seriousness of Larsen's medical condition during the course of her detention.

In order to establish that the officers in questions were deliberately indifferent, Larsen must show that they were "'both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . "also dr[e]w that inference."'" Caiozzo, 581 F.3d at 72 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (alterations in original). While only Maldonado denies having been informed by Larsen of her medical condition, all of the officers claimed to have not seen anything that gave them reason to believe Larsen was in need of medical attention. However, a reasonable jury crediting Larsen's testimony could find that Larsen's communications and the description of her symptoms were sufficient to put the officers on notice of her condition. See Archer v. Dutcher, 753 F.2d 14, 17 (2d Cir. 1984) (finding that plaintiff's claim to have informed prison personnel of her injury was sufficient to create a material issue of fact); see also Mills v. Fenger, 216 F. App'x 7, 10 (2d Cir. 2006) ("[T]he state of the defendant's knowledge is normally a question of fact

7

to be determined after trial." (internal quotation marks omitted)).

In light of the evidence, the court finds that there is a material issue of fact as to whether the officers were deliberately indifferent to a serious medical need in violation of Larsen's Fourteenth Amendment rights.

C. Qualified Immunity

An officer is not entitled to qualified immunity for the purposes of summary judgment if (1) "the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) . . . that right was clearly established at the time of the alleged violation." Tracy, 2010 WL 408747, at *4. The rights to be free from the use of unreasonable force and to not be treated with deliberate indifference were both clearly established at the time of the supposed violation in this case. See, e.g., Hartman v. County of Nassau, 350 F. App'x 477, 479 (2d Cir. 2009) (citing Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003)) (unreasonable force); Mills, 216 F. App'x at 11 (citing Liscio v. Warren, 901 F.2d 274 (2d Cir. 1990)) (deliberate indifference).

The applicability of the defense of qualified immunity is generally a question of law for courts to decide, and an officer may still be entitled to qualified immunity if his behavior falls in the "hazy border" between acceptable and unacceptable behavior. Hartman, 350 F. App'x at 479. However, when the facts concerning the availability of qualified immunity are in dispute, "jury consideration is normally required." Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007). If a jury were to credit Larsen's testimony, qualified immunity would be inapplicable as to both of Larsen's claims, and summary judgment is therefore inappropriate.

8

## V. CONCLUSION

For the foregoing reasons, the court denies defendants' Motion for Summary Judgment (Doc. No. 32).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 17th day of November, 2010.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge